# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : Crim. No. 1:22-CR-00040 |
| v. | : |
| CHRISTOPHER LOPEZ and MICHAEL TORRES | : Judge Jennifer P. Wilson |

## **MEMORANDUM**

This is a criminal case in which Defendants Christopher Lopez ("Lopez") and Michael Torres ("Torres") were charged in a one-count indictment with money laundering conspiracy. (Doc. 1.) On February 16, 2024, following a trial, the jury found Lopez and Torres guilty. The case is presently before the court on the motions for acquittal or a new trial filed by Lopez and Torres. (Docs. 87, 89.) Because the court concludes that sufficient evidence supports the jury's verdict, and it did not err in denying the entrapment jury instruction, the court will deny the motions.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 2, 2022, a grand jury indicted Lopez and Torres for one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h). (Doc. 1.) On February 16, 2024, following a four-day trial, the jury convicted Lopez and Torres. (Doc. 82.)

1

The evidence at trial established that Lopez owned C&D Motorsports LLC ("C&D"), a used car dealership where Torres was a salesperson. Two undercover IRS agents, John Thompson ("JT") and Lisa Ulrikson ("Lisa"), visited C&D on October 19, 2019. On that visit, JT test drove a vehicle with Torres. The jury heard JT testify about the test drive and also heard portions of audio recordings which JT made during the October 19, 2019 visit. During the test drive, JT made explicit that he was, and had been for a long time, a cocaine trafficker. (Gov't Ex. 36, pp. 18–19.) And, although he had cash, neither he nor his girlfriend, Lisa, had a job. (*Id.* at 19–20.) JT had no bank account and he conducted all of his business in cash. (*Id.* at 19–20.) JT expressed that, if he bought a car, he wanted it to be in Lisa's name. (*Id.* at 18.) Throughout this interaction, Torres displayed no hesitancy to sell a car on JT's terms. Nor did he make any indications that he did not understand JT's representations. Rather, he repeatedly tried to put JT at ease and move him towards buying a vehicle. He did so with assurances like "I ain't no federal agent," and "[b]y any means necessary, brother." (*Id.* at 18.)

After the test drive, JT spoke with Lopez, and the jury likewise heard portions of that recording. JT made the same representations to Lopez that he had to Torres, including that he was a long-time cocaine dealer. (*Id.* at 35–36, 39–40, 43–44.) He restated that, if he bought a car, he wanted it in Lisa's name and that he "don't need government forms." (*Id.* at 44.) Lopez displayed no aversion to

JT's terms and indicated that he was interested in selling a car to him. He also expressed that, although he was available to speak with JT, JT could work directly with Torres: "Mike's my man, dude . . . Anything he says will go." (*Id.* at 43.) Before the visit was over, Torres told JT, "I want you to buy all your cars from us." (*Id.* at 50.)

On December 5, 2019, JT contacted Torres by text about a Range Rover SUV (the "SUV") that C&D had for sale. (Gov't Ex. 38.) Torres confirmed that the SUV was still available, stated that he remembered JT, and asked if JT intended to buy the SUV with cash. (*Id.*) On December 11, 2019, JT and Lisa visited C&D. They were again outfitted with audio recording devices, and Lisa had a camera that captured video.

Lopez and Torres both indicated that they remembered JT. JT told Lopez that he might refer him business—his associates were "discreet" and "just care about them government forms." (Gov't Ex. 42, p. 20.) JT test drove the SUV. Afterwards, he negotiated the sales terms for the SUV with Torres. They agreed on a price, JT confirmed that the SUV would be sold under Lisa's name, and Torres indicated that he would need Lisa's driver's license for the paperwork.[1] (*Id.*

---

[1] Lopez and Torres dispute that the vehicle was put in Lisa's name to conceal the source of the funds. Rather, they argue, it was put in her name because "she lives in PA." (Doc. 88, p. 5; Doc. 90, p. 4.) The evidence showed that JT explicitly told Lopez and Torres that he was a cocaine trafficker and wanted his purchase in Lisa's name. He also stated that he did not want any "government forms" and that he and his associates were "discreet." (Gov't Ex. 42, p. 20.) Lopez and Torres now ask the court to draw an inference in their favor that the forms were put in

at 26–27, 34–45.)  JT paid $33,120 in cash for the SUV.  The paperwork indicated that Lisa had paid for the vehicle.  (Gov't Exs. 43-1, 43-2, 43-3, 43-4, 43-5.)

At trial, the court instructed the jury that, to find Lopez and Torres guilty of conspiracy, it must be convinced that they agreed with one another to violate 18 U.S.C. §§ 1956(a)(3)(B) and (C); that they knew the unlawful purpose of the agreement; and that they joined in the agreement willfully.  The court next instructed the jury that §§ 1956(a)(3)(B) and (C) make it a crime to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity to conceal or disguise the nature, location, source, ownership, or control of the proceeds of a specified unlawful activity, or to avoid a transaction reporting requirement under Federal law.  The court instructed that the elements of the offense are as follows:

> First:  That the defendants knowingly conducted an actual or attempted financial transaction;
>
> Second:  That the financial transaction involved property represented to be the proceeds of a specified unlawful activity, and
>
> Third:  That, in conducting the financial transaction, the defendants:

---

Lisa's name because she lived in Pennsylvania and not to conceal the source of funds.  But, under Rule 29(c), all reasonable inferences must be drawn in favor of the jury's verdict.  And it is a reasonable inference that the SUV was put in Lisa's name to conceal the source of the cash that paid for it.

> 1. intended to conceal or disguise the nature, location, source, ownership, or the control of property believed to be the proceeds of a specified unlawful activity; or
>
> 2. conducted the financial transaction with knowledge that the transaction was designed in whole or in part to avoid a transaction reporting requirement under State or Federal law.

The court also provided a willful blindness instruction to the jury. The Defendants had requested an entrapment instruction. But, at the charge conference, the court found that the Defendants had not met their burden to warrant giving the entrapment instruction. That is, Defendants had not produced evidence to show government inducement of the crime or a lack of predisposition on the part of Defendants to engage in the criminal conduct. Accordingly, the court did not provide an entrapment instruction to the jury.

The jury found Lopez and Torres guilty of conspiracy to commit money laundering, unanimously finding them to have conspired to conceal or disguise the nature, source, ownership or control of property believed to be proceeds of cocaine distribution. (Doc. 82.)

On March 1, 2024, Lopez and Torres filed the instant motions. (Docs. 87, 89.) Lopez and Torres seek judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c). Lopez also asserted that this court erred in denying his

request for an entrapment instruction. (Doc. 87, p. 3.) Accordingly, he requests a new trial pursuant to Rule 33.[2] (*Id.*) Lopez and Torres filed briefs in support of their motions and the Government filed an opposition brief. (Docs. 88, 90, 94.) The motions are ripe for resolution.

## STANDARD OF REVIEW

In ruling on a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, the court must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001)). The court is required to "draw all reasonable inferences in favor of the jury's verdict." *Id.* at 476–477 (quoting *United States v. Anderskow*, 88 F.3d 245, 251 (3d Cir.1996)). The court must be careful to find that evidence is insufficient only when "the prosecution's failure is clear." *Id.* at 477 (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)). In addition, the court must not usurp the jury's role "by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005).

---

[2] While Torres' motion also requests a new trial pursuant to Rule 33, his brief in support only addresses acquittal under Rule 29. (Doc. 90.)

In ruling on a motion for new trial pursuant to Federal Rule of Criminal Procedure 33, the court must determine whether "the jury's verdict is contrary to the weight of the evidence." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). In conducting this analysis, the court "does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *Id.* A new trial is warranted when a court concludes that the verdict is against the weight of the evidence and the court "believes that there is a serious danger that a miscarriage of justice has occurred–that is, that an innocent person has been convicted." *Id.*

## DISCUSSION

**A. Sufficiency of Evidence**

Lopez and Torres argue that they were convicted with insufficient evidence to show that they knew that JT's money represented proceeds of an unlawful activity. (Doc. 88, pp. 2–4; Doc. 90, pp. 1–3 (citing *United States v. Omoruyi*, 260 F.3d 291, 294–95 (3d Cir. 2001); *United States v. Richardson*, 658 F.3d 333, 337–38 (3d Cir. 2011)).) But the cases on which they rely and the related standard do not apply here. *Omoruyi* and *Richardson* relate to violations of § 1956(a)(1). 260 F.3d at 294; 658 F.3d at 337. In those cases, as Lopez and Torres accurately quote, the Government had to establish in part "knowledge that the transaction involve[d] the proceeds of some unlawful activity."

Defendants argue that the same standard applies here and that the Government had to show that Lopez and Torres <u>knew</u> that the property represented proceeds of an unlawful activity. That standard is incorrect. Lopez and Torres were convicted of a different subsection of the statute: § 1956(a)(3). Under this subsection, the Government had to show that the transaction involved property <u>represented</u> to be proceeds of an unlawful activity and that Defendants <u>believed</u> to be proceeds from drug trafficking. It did not have to show that they <u>knew</u> as much.

Reviewing the facts in the light most favorable to the Government, the court finds that a rational trier of fact could have found Lopez and Torres guilty beyond a reasonable doubt based on the available evidence presented at trial. There is no dispute that the first element of the crime was satisfied—Lopez and Torres conducted a financial transaction by selling the SUV to JT. The second element was also met, because there was extensive evidence presented at trial showing that JT was providing the funds and his sole source of funds was cocaine trafficking—a specified unlawful activity. JT explicitly told both Lopez and Torres that he had been selling cocaine since he was eighteen years old. Each indicated that they understood and told JT that they were happy to do business with him.

There was also evidence sufficient for a trier of fact to find that, in conducting the transaction, Lopez and Torres intended to conceal or disguise the nature, location, source, ownership, or the control of property believed to be the

proceeds of a specified unlawful activity. JT, an admitted cocaine dealer, negotiated the purchase and provided the funds to buy the SUV. But, per the wishes that JT expressed to Lopez and Torres, the SUV was put in Lisa's name: the purchase forms all represented that Lisa was the purchaser and had provided the funds to buy the SUV. None of the paperwork made any reference to JT.

Lastly, there was sufficient evidence to permit the jury to make inferences about Lopez's and Torres' agreement, understanding, knowledge, and intent. That is, it was reasonable for the jury to find beyond a reasonable doubt that Lopez and Torres had knowingly and willfully agreed to conduct a transaction with proceeds represented to be from an illicit source and to conceal the source of the proceeds. The arguments raised by Lopez and Torres fail to meet the Rule 29(c) hurdle. The court will deny their motion to acquit.

### B. Motion for New Trial – Entrapment Instruction

Lopez argues that a new trial is necessary because the court erred in failing to provide an entrapment instruction to the jury. In doing so, the court "impermissibly weighed the evidence and improperly weighed the evidence against Lopez due to his willingness to commit the crime by his ready response to the inducement, evidenced by his failure to backout given that two months had passed between the first meeting and the sale." (Doc. 88, p. 10.)

Under binding precedent, "entrapment is a relatively limited defense that may defeat a prosecution only when the Government's deception actually implants the criminal design in the mind of the defendant." *Wright*, 921 F.2d 42, 44 (3d Cir. 1990) (cleaned up). The entrapment defense has "two related elements: (1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Id.* The Third Circuit has held that a trial court "should not instruct on entrapment unless the defendant has presented evidence on both prongs of the defense." *Id.*

The first element, inducement, "may take many forms, including persuasion, fraudulent representation, threats, coercive tactics, harassment, promises of reward of pleas based on need, sympathy or friendship." *Id.* at 45 (cleaned up). But the Third Circuit has held that "mere solicitation by the government, without more, is not 'inducement.'" *Id.* Instead, inducement requires that "the government's actions . . . overpowered the defendant." *United States v. James*, 928 F.3d 247, 256 (3d Cir. 2019).

Lopez does not analyze the inducement element. He merely concludes that he was induced by the Government to engage in the transaction. (Doc. 88, pp. 7–11.) In doing so, he does not point towards any specific evidence indicating that the Government agents engaged in persuasion, fraudulent representation, threats, coercive tactics, harassment, promises or rewards, or pleas based on need,

10

sympathy or friendship.  Rather, he merely implies that the Government induced him to commit the crime and states that he was completely unaware that he was committing a crime.[3]  (*Id.*)

The Government argues that there is no evidence suggesting that JT's communications with either Defendant went beyond solicitation.  (Doc. 94, p. 48.)  Nothing in the record suggests harassment, threats, coercion, or promises of rewards.  (*Id.*)  Rather, JT told Lopez and Torres that he was a drug dealer with no job who was looking to make a cash transaction under someone else's name.  (*Id.*)  JT "merely open[ed] an opportunity for a crime," which is "insufficient" to show inducement.  (*Id.* at 47–48 (quoting *United States v. Dennis*, 826, F.3d 683, 690 (3d Cir. 2016)).)

Lopez does not respond to this argument or any of the binding precedent on which the Government relies with respect to the element of inducement.  Lopez's initial brief does not address *Wright* or *Dennis*.  And he did not file a reply brief.  As at trial, Lopez has failed to bear his burden of production in showing inducement.  The court did not err by not providing an entrapment instruction to the jury.[4]

---

[3] Lopez provides no factual basis for this assertion.  But he implies that the existence of a two-month gap between JT's first and second visits to C&D somehow create an inducement. (Doc. 88, p.10.)

Accordingly, the court perceives no danger that a miscarriage of justice has occurred. The court does not perceive that an innocent person has been convicted. Accordingly, it will deny Lopez's request for new trial under Rule 33.

## CONCLUSION

For the foregoing reasons, Lopez' and Torres' motions will be denied. An appropriate order follows.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Judge<br>
Middle District of Pennsylvania

Dated: June 14, 2024

---

[4] The Government also argues that Lopez has failed to show a lack of predisposition to engage in criminal conduct. (Doc. 94, pp. 48–51.) Because Lopez failed to show inducement, the court will not address predisposition.